IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**MICHAEL A. DOBSON,**

    Plaintiff,

v.                                                                                                              Civil Action No. **3:22CV132**

**HAROLD CLARKE,** *et al.,*

    Defendants.

**MEMORANDUM OPINION**

Michael A. Dobson, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action in which he alleges Dr. Thompson denied him adequate medical care in violation of the Eighth Amendment while Dobson was incarcerated in Buckingham Correctional Center ("BCC").[1] The matter proceeds on Dobson's Particularized Complaint and only one claim remains as follows:[2]

    Claim Two:     Dr. Thompson was deliberately indifferent to Dobson's serious mental health needs when he failed to inform Dobson of, or record in Dobson's medical files, the results of the MMPI-2 test leading to later misdiagnosed health conditions. (ECF No. 49, at 18.)[3]

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system. The Court also corrects the spelling, capitalization, and punctuation in the quotations from the parties' submissions.

[2] By Memorandum and Order entered on August 9, 2023, the Court dismissed all of the other claims and Defendants because they were improperly joined, Dobson failed to adequately allege a claim against them, or the claims were untimely. (ECF Nos. 49, 50.)

[3] In the August 9, 2023 Memorandum Opinion the Court explained that, "[t]he Court is compelled to clearly identify the remaining claim because Dobson's complaint is filled with rambling allegations spanning from 2017 to 2022 that do not identify any personal involvement of Dr. Thompson or any deprivation of his Eighth Amendment rights." (ECF No. 49, at 18 n.12.) The Court also found that only allegations from the period of February 2019 forward remain before the Court because all of the other allegations were untimely. (*Id.* at 15.)

Dobson fails to identify any relief that he is seeking. (*Id.* at 26.) In his original Complaint, however, Dobson indicated that he sought "an oversight commission of D.O.C., the email stolen, redress, $750,000." (ECF No. 1, at 2.) The matter is before the Court on Dobson's Motion for Summary Judgment, (ECF No. 82), the Motion for Summary Judgment filed by Dr. Thompson, (ECF No. 83), and a variety of motions filed by Dobson. Dobson has filed a response. (ECF No. 87.) Because Dobson's claim lacks merit, Dobson's Motion for Summary Judgment will be DENIED, and the Motion for Summary Judgment filed by the Dr. Thompson will be GRANTED.

### I. DOBSON'S MOTION FOR SUMMARY JUDGMENT

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the responsibility of the party seeking summary judgment to inform the court of the basis for the motion and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Further, per this Court's Local Rules, a motion for summary judgment shall state with particularity the grounds upon which it is based and shall be accompanied by a written brief setting forth a concise statement of the facts and supporting reasons, along with a citation of the authorities upon which the movant relies. E.D. Va. Loc. Civ. R. 7(A), (F); E.D. Va. Loc. Civ. R. 56(B).

Dobson's Motion for Summary Judgment does none of the above. Accordingly, Dobson's Motion for Summary Judgment, (ECF No. 82), is DENIED.[4]

### II. STANDARD FOR SUMMARY JUDGMENT

In addition to the standards for summary judgment identified above for the moving party, "where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

---

[4] As discussed later, the Motion for Summary Judgment is also denied because Dobson fails to show he is entitled to relief.

2

judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). A mere scintilla of evidence, however, will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citing *Improvement Co. v. Munson*, 81 U.S. (14 Wall.) 442, 448 (1872)). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials.").

In support of his Motion for Summary Judgment, Dr. Thompson submits his own declaration, (ECF No. 84–1), and attests that the pages of medical records attached, (ECF No. 84–2), are true and correct.

At this stage, the Court is tasked with assessing whether Dobson "has proffered sufficient proof, *in the form of admissible evidence*, that could carry the burden of proof of his claim at trial."

3

*Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. The facts offered by an affidavit or sworn declaration must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c)(4). The sworn statement "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* Finally, because they must be in the form of admissible evidence, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted). The absence of an "affirmative showing of personal knowledge of specific facts" prevents the consideration of such facts in conducting a summary judgment analysis. *EEOC v. Clay Printing Co.*, 955 F.2d 936, 945 n.9 (4th Cir. 1992) (citation omitted) (internal quotation marks omitted).

Dobson has submitted two sworn Affidavits in support of his claim. (ECF No. 82-1: ECF No. 87, at 9–11).[5] Although they are sworn, Dobson's affidavits run afoul of the above principles. The first Affidavit, submitted with his Motion for Summary Judgment, (ECF No. 82-1), is rambling and hard to follow; contains information unrelated to the remaining claim before the Court; and contains legal conclusions, questions, and argument that are not evidence. The Affidavit also contains facts that pre-date February 2019, and the Court already explained those facts and allegations are untimely. Accordingly, those facts will not be considered here. Dobson

---

[5] To the extent that Dobson swore under penalty of perjury to any brief or memoranda, that does not transform those submissions into admissible evidence. The Court informed Dobson: "[T]he Court will not consider as evidence in opposition to any motion for summary judgment a memorandum of law and facts that is sworn to under penalty of perjury. Rather, any verified allegations must be set forth in a separate document titled 'Affidavit' or 'Sworn Statement,' and reflect that the sworn statements of fact are made on personal knowledge and the affiant is competent to testify on the matters stated therein." (ECF No. 51, at 2 (citing Fed. R. Civ. P. 56(c)(4)).

4

also complains about his health conditions and problems without providing any date. It appears from the context, however, that many once again pre-date February 2019. Finally, Dobson includes facts about different Defendants at a different institution (Red Onion State Prison), and Dobson is aware that those claims have already been dismissed without prejudice because they were improperly joined.[6] Dobson's second Affidavit, (ECF No. 87, at 9–11), is an affidavit in title only. This submission is composed almost entirely of legal argument and quotes from Dr. Thompson's affidavit. Nevertheless, the Court has parsed the two affidavits for relevant, admissible facts.

In light of the foregoing submissions and principles, the following facts are established for the Motion for Summary Judgment. All permissible inferences are drawn in favor of Dobson.

### III. UNDISPUTED FACTS

Until April 1, 2019, Dr. Thompson worked as a Qualified Mental Health Professional at BCC. (ECF No. 84-1 ¶¶ 4, 18.) Dobson was an inmate at BCC until he was transferred to Red Onion State Prison in March 2019. (*Id.* ¶ 5.) During his incarceration at BCC, Dobson had been housed in restrictive housing for some time. (*Id.*) On February 7, 2019, Dr. Thompson saw Dobson for evaluation and observed no psychiatric symptoms. (*Id.* ¶ 6.) But because Dobson had been housed in restrictive housing for an extended period, and Dr. Thompson believed that segregation can be detrimental to an inmate's mental health, he made a plan to discuss Dobson's housing assignment with Virginia Department of Corrections ("VDOC") staff. (*Id.*) Dr. Thompson contacted VDOC officials and recommended that Dobson be moved into a less restrictive environment to improve his mental health. (*Id.* ¶ 7.)

---

[6] As the Court already explained, because those claims were dismissed without prejudice Dobson is free to file a complaint raising those claims in the United States District Court for the Western District of Virginia the appropriate venue for claims arising out of Red Onion.

On February 15, 2019, Dr. Thompson saw Dobson for a follow-up appointment. (*Id.* ¶ 8.) Dr. Thompson planned to administer the MMP1-2 to rule out Dobson having an anxiety disorder. (*Id.*; *see* ECF No. 84-2, at 5.) The "MMPI-2 is an assessment tool used to help establish a diagnosis. While it is used to help mental health professionals screen for mental health conditions, mental health professionals do not rely on the results alone when diagnosing and treating a patient." (ECF No. 84-1 ¶ 10.)

On February 25, 2019, Dobson was administered, and completed, the MMP1-2 test. (*Id.* ¶ 9.) Dr. Thompson explains:

> The MMP1-2 was administered and scored with National Computer Services software. The software generates a Minnesota Adult Clinical Report ("Minnesota Report"). The Minnesota Report in and of itself is not a binding diagnosis but rather a tool used to better help establish a diagnosis. It is important to note that the Minnesota Report included cautionary statements indicating that the descriptions, inferences, and recommendations in the report need to be verified by other sources of available clinical information.

(*Id.* ¶ 11.) After scoring the Minnesota Report, the results were placed in Dobson's medical record. (*Id.* ¶ 12.) Dr. Thompson never saw Dobson again after the administration of the test. (ECF No. 82-1, at 2.) Dr. Thompson never told Dobson the results of the test. (*Id.*)

On March 7, 2019, Dobson was transferred to Red Onion State Prison and to the care of the medical and mental health professionals at that facility. (*Id.* ¶ 13.) Dobson's medical and mental health records were transferred to Red Onion, which would include the MMPI-2 results. (*Id.*) In his Intra-system Transfer Medical Review, Dobson denied having any current mental health complaints or any history of treatment, and the nurse noted no observed symptoms of psychosis or anxiety. (ECF No. 84-2, at 25.) Dr. Thompson was not notified when or where Dobson was transferred. (ECF No. 84-1 ¶ 14.)

6

At Red Onion, Dobson had full access to medical and mental health services. (*Id.* ¶ 15.) Dr. Thompson avers that, although he discussed Dobson's housing assignment with VDOC supervisors, he had no involvement in the ultimate decision to transfer Dobson to Red Onion. (*Id.* ¶ 17.) Dobson's transfer over 300 miles away to a different facility made it impossible for him to meet with Dobson to continue the diagnostic process; rather, upon Dobson's transfer the provision of mental health services became incumbent on the mental health staff at Red Onion. (*Id.* ¶ 16.) The mental health providers at Red Onion had the results of the MMPI-2 test to view and use in their assessment and treatment of Dobson. (*Id.*)

On April 1, 2019, Dr. Thompson retired from working for the VDOC and no longer had any clinical responsibilities regarding patients at BCC or any other VDOC facility. (*Id.* ¶ 18.)

## IV. ANALYSIS

### A. Eighth Amendment Principles

To survive summary judgment, an inmate must demonstrate (1) that objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). With respect to the denial of adequate medical care, "a prisoner must [demonstrate] acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong requires the plaintiff to demonstrate that a particular defendant acted with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (stating same). Thus, to survive a motion for summary judgment, the deliberate indifference standard requires a plaintiff to demonstrate that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)).

### B. Claim Two

In Claim Two, Dobson contends that Dr. Thompson was deliberately indifferent to Dobson's serious mental health needs when he failed to inform Dobson of, or record in Dobson's

8

medical files, the results of the MMPI-2 test leading to later misdiagnosed health conditions. (ECF No. 49, at 18.)[7] Dobson, however, fails to demonstrate that Dr. Thompson was deliberately indifferent to Dobson's serious mental health needs. First, it is unclear from Dobson's submissions whether, in February of 2019, Dobson had a serious mental health need. Even assuming that Dobson had such a need at that time, Dobson fails to show that Dr. Thompson knew of and disregarded an excessive risk to Dobson's health of safety. Upon assessing Dobson on February 7, 2019, Dr. Thompson noted that Dobson exhibited no psychiatric symptoms. Dr. Thompson, however, was concerned about Dobson's well-being after being placed in restrictive housing for an extended period. Dr. Thompson discussed moving Dobson to less restrictive housing with VDOC supervisors because of his concerns about Dobson's mental health. When Dr. Thompson decided that he wanted to rule out whether Dobson had an anxiety disorder, he ordered the MMPI-2 test to help him with his clinical assessment. It is unclear when the results of the test came back to Dr. Thompson or what they showed.[8] Dr. Thompson, however, avers that after scoring the Minnesota Report, the results were placed in Dobson's medical record, and his medical record transferred with Dobson when he moved to Red Onion. (ECF No. 84-1 ¶ 12.)[9]

---

[7] Dobson alleges that the medical staff at Red Onion believed he had heart problems when he actually had PTSD, panic disorder, and anxiety. (ECF No. 35, at 4, 19.)

[8] Dobson contends that the test showed "a serious mental health condition." (ECF No. 82-1, at 2.) Dobson, however, fails to provide specific facts that supports this assertion. *See United States v. Roane*, 378 F.3d 382, 400–1 (4th Cir. 2004) (concluding that "[a]iry generalities [and] conclusory assertions . . . [do] not suffice to stave off summary judgment . . . ." (citation omitted) (internal quotation marks judgment)).

[9] Dobson contends that a non-VDOC doctor, Dr. McDuffie, purportedly had trouble accessing the MMPI-2 results two years later while he was housed at Red Onion. According to Dobson, Dr. McDuffie said, "it was in a off si[te] folder and listed me as an out of state inmate and not to do anything with me before contacting HQ." (ECF No. 82-1, at 4.) The Court fails to discern how Dr. Thompson, who did not work at Red Onion and retired less than a month after Dobson was transferred, would be responsible for where and how Dobson's medical record would

9

Dobson makes much of the fact that between when he took the test on February 25, 2019, and when Dobson was transferred to Red Onion on March 7, 2019, Dr. Thompson never saw Dobson again or told Dobson the findings of the test. (ECF No. 82-1, at 2.) However, Dobson was transferred a mere eleven days after he was administered the test. Dobson fails to demonstrate that Dr. Thompson knew of and disregarded a serious risk of harm to Dobson by not scheduling an appointment with Dobson in the eleven-day period before Dobson was transferred. At the time Dobson was transferred, Dobson denied having any current mental health complaints or any history of treatment and the nurse in Dobson's transfer assessment noted no observed symptoms of psychosis or anxiety. Moreover, Red Onion had mental health staff that would assess and treat Dobson, and Dr. Thompson was not personally responsible for their actions or inaction.[10]

In sum, Dobson fails to demonstrate that Dr. Thompson was deliberately indifferent to his mental health needs by not meeting with Dobson after the administration of the text or communicating to Dobson his findings. Claim Two lack merits and will be DISMISSED.

## V. OUTSTANDING MOTIONS

Dobson has a number of outstanding motions that will be denied for several reasons. First, Dobson has been warned several times that all motions must be accompanied by an appropriate

---

be stored. Moreover, this hearsay statement also reflects that the results of the MMPI-2 were, indeed, placed in Dobson's medical record even if not easily accessible.

Dobson also argues that he believes that it is a violation of VDOC policy for Dr. Thompson not to write a note that was easy for staff at Red Onion to find. (ECF No. 87, at 6, 9–10.) But the failure to follow VDOC institutional policy or procedure, standing alone, does not state a claim of constitutional dimension. *See Riccio v. Cty. of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990)

[10] After the transfer, Dobson was no longer in Dr. Thompson's care, and Dr. Thompson retired less than a month later. Dobson also appears to blame Dr. Thompson for his transfer to Red Onion, which is not part of the claim that remains before the Court. Nevertheless, while Dr. Thompson discussed transferring Dobson to less restrictive housing, the undisputed evidence establishes that Dr. Thompson was not involved in that transfer decision.

brief as required by Local Civil Rule for the Eastern District of Virginia 7(F)(1). (*See, e.g.*, ECF No. 40, at 1–2; ECF No. 77, at 1.) None of his motions are accompanied by briefs, and for this reason alone they may be denied. Next, Dobson filed a Motion to Re-Add Defendants Director Herrick and Director of VDOC, Dotson. ("Motion to Re-add," ECF No. 88.) The Court fails to discern why these parties should simply be "re-added" back to the action, as they were dismissed for improper joinder.[11] Dobson also filed a Motion to Amend. (ECF No. 96.) The Motion to Amend appears to only contain argument. Neither the Motion to Re-add or Motion to Amend was accompanied by a proposed amended complaint. Dobson has been warned previously that litigants may not spackle new allegations or defendants onto the original complaint. (*See* ECF No. 46, at 2 (quoting *Williams v. Wilkerson*, 90 F.R.D. 168, 169–70 (E.D. Va. 1981) (explaining that when a plaintiff seeks leave to amend his complaint, "a copy of the proposed amended pleading, and not simply the proposed amendment, must be attached to the motion"))). Despite the prior warning, Dobson still refuses to heed the Court's instructions. The Motion to Re-Add Defendants Director Herrick and Director of VDOC, Dotson, (ECF No. 88), and the Motion to Amend, (ECF No. 96), will be DENIED. The Motions for Injunctive Relief, (ECF Nos. 91, 92), will also be DENIED because Dobson's remaining claim lacks merit.

Finally, Dobson filed a Reply to Amended Memorandum Motion for Summary Judgment, and a Motion for More Definite Statement. (ECF No. 95.) Dobson fails to identify the procedural vehicle that would allow such a filing. Nevertheless, the Court has reviewed this submission and it appears to be more of the same argument in support of his claim. To the extent that Dobson attempts to raise new arguments and allegations, however, he may not do so at this juncture and in

---

[11] Dobson argues that because Dr. Thompson mentions discussing a transfer with VDOC supervisors, then it should be assumed that Herrick and Dotson were the individuals whom Dr. Thompson spoke with. This is entirely speculative, and once again, is a different claim than the single claim remaining before the Court.

this manner. To the extent that Dobson asks the Court to order Dr. Thompson to submit a more definite statement, that request, (ECF No. 95), is DENIED.

## VI. CONCLUSION

Dobson's Motion for Summary Judgment, (ECF No. 82), will be DENIED. The Motion for Summary Judgment filed by Dr. Thompson, (ECF No. 83), will be GRANTED. Dobson's outstanding motions, (ECF Nos. 88, 91, 92, 95, 96), will be DENIED. The action will be DISMISSED.

An appropriate Order will accompany this Memorandum Opinion.

Date: 4 April 2024
Richmond, Virginia

/s/
John A. Gibney, Jr.
Senior United States District Judge